IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW ARMBRUSTER,                )
                                   )
              Plaintiff            )
                                   )
         vs.                       )
                                   )
DANIEL MARGUCCIO, PHILLIP KEIM,    )    Civil Action No. 05-344J
EUGENE SMITH, CHAD MILLER, SCOTT   )
HAYMAKER, Mr. PAGE, Mr. MATCHO,    )
CRAIG FOUST, THE JOHNSTOWN POLICE  )    Judge Kim R. Gibson/
DEPARTMENT and THE CITY OF         )    Magistrate Judge Amy
JOHNSTOWN,                         )    Reynolds Hay
                                   )
              Defendants           )
                                   )    RE:  Doc. No. 49

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the Defendants' motion
for summary judgment be granted in part and denied in part.  It
should be granted as to all Defendants as to all of Plaintiff's
claims except, the summary judgment motion should be denied but
only as to Plaintiff's claim that Defendant Marguccio's first
tasering of him violated his Fourth Amendment rights.

REPORT

Matthew Armbruster (Plaintiff) has filed a civil rights
action against seven Johnstown City Police officers, the Police
Chief of Johnstown, the Police Department of Johnstown and the
City of Johnstown, alleging that the police officers utilized
excessive force in effectuating Plaintiff's arrest and thereby
violated Plaintiff's constitutional rights.

Plaintiff, who at the time of instituting this civil rights action was a prisoner at the Cambria County Prison, is proceeding as a pauper.  Doc. 8.  The operative complaint is Doc. 16.  The Defendants filed a motion to dismiss with attached evidentiary materials, requesting that the motion to dismiss be treated as a motion for summary judgment (Doc. 49), and a brief in support (Doc. 50).  The court ordered that the motion would be treated as one for summary judgment and directed Plaintiff to file a response.  Doc. 53.  Plaintiff filed a response (Doc. 61), a concise statement of material facts (Doc. 62) and a brief in opposition (63), with an appendix of exhibits (Doc. 64).

### *Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  As the Supreme Court has explained,

> Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The
moving party "has the burden of showing there is no genuine issue
of material fact, and once the moving party has sustained its
burden, the opposing party must introduce specific evidence
showing that there is a genuine issue for trial."  Williams v.
Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989)(citing
Celotex Corp., supra at 322-24).

Determining whether a material fact is "genuine" requires
"an inquiry into 'whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law.'" Brown
v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied,
501 U.S. 1218 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 251-52 (1986)).  "Summary judgment will not lie if the
dispute about a material fact is "genuine," that is, if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.  Anderson v. Liberty Lobby, Inc., supra
at 248.

### *The Complaint and Summary Judgment Record*

The operative complaint alleged the use of excessive force
by the arresting officers **after** Plaintiff was handcuffed and
allegedly not resisting the officers in violation of his Fourth
Amendment Rights.  Doc. 16 at 3, ¶ 14.  See also Doc. 63 at 7
("The use of excessive force was not deployed until the Plaintiff

3

was handcuffed behind his back, on the ground face down, and after a short period had elapsed."). Plaintiff does not allege the use of excessive force prior to this time. The only specific assault alleged in the complaint is that the Defendants "assaulted the plaintiff by deploying a taser gun on the Plaintiff's head and neck repeatedly after he was handcuffed behind his back and not resisting arrest." Doc. 16 at 3-4 ¶ 15.[1]

Later, in Plaintiff's brief in opposition to the motion for summary judgment, he mentions for the first time that the officers were "striking the Plaintiff with hands, feet and legs; slamming or pressing the Plaintiff into a squad car and probably the most intrusive, tasering the Plaintiff[.]" Doc. 63 at 6.

It is undisputed that Plaintiff was driving without a license at the time Officer Keim stopped Plaintiff. Plaintiff admits that despite having been stopped by Officer Keim, and asked for his license, and after Plaintiff's female passenger got out of the vehicle, Plaintiff drove away from Officer Keim. Doc.

---

[1] Although in his complaint he also alleges that the Defendants committed perjury on the stand in his criminal trial that resulted from the arrest, and violated his Eighth Amendment rights, in his brief in opposition, Plaintiff correctly concedes that these causes of action are not viable and that only his Fourth Amendment claim is viable. Doc. 63 at 2 ("The Plaintiff recognizes that the only applicable § 1983 claim against the individual defendants is the Plaintiff's claim that is [sic] that his Fourth Amendment Right was violated as a result of the use of excessive force."). See also Briscoe v. La Hue, 460 U.S. 325 (1983)(police officers, like anyone else testifying in judicial proceedings are absolutely immune for their testimony even if the testimony was allegedly perjurious); Fuentes v. Wagner, 206 F.3d 335, 344 n. 11 (3d Cir. 2000)(Eighth Amendment is applicable only after a person is convicted).

4

62 at 5.  Thereafter, Officer Keim reentered his cruiser and called for back up.  Plaintiff then stopped his car after making a u-turn around Officer Keim's cruiser.  Plaintiff admits that after he stopped the car, Officer Keim ordered Plaintiff out of the car and to get on the ground multiple times.  Doc. 62 at 7. Although Officer Keim attests that he requested Plaintiff to get on the ground and lie prone with his hands at his side, Plaintiff disputes that he was told to lie on the ground prone with his hands at his side.  Doc. 62 at 7.   Plaintiff admits however, that notwithstanding Officer Keim's order to simply get on the ground, after Plaintiff got down to his knees, he again stood up and re-entered his car and drove off again.  Doc. 62 at 7. Plaintiff alleges that he decided to drive the three blocks to the Police station because the "situation was escalating."  Doc. 62 at 7.   Responding to Officer Keim's call for assistance, other police cruisers stopped Plaintiff's car. Specifically, Officer Marguccio drew his weapon and ordered Plaintiff to exit his vehicle.  Although Plaintiff denies that he failed to comply with the verbal commands, he concedes that he "complied slowly due to confusion and numerous contrary orders."  Doc. 62 at 9. Plaintiff admits that he was removed from his car, placed down on the roadway and handcuffed behind his back.  The Defendant officers, who were involved in the arrest, attested to the fact that while Plaintiff was on the ground, he began to thrash

around, kicking his legs and trying to get up.  Doc. 51 at 4, ¶ 7.  Plaintiff specifically denies that he began to thrash around, and kick his legs and that he tried to get up.  However, in his testimony in his trial, Plaintiff conceded that he was moving around, perhaps twitching, but asserted that his movements were not voluntary.  The following exchange took place at Plaintiff's criminal trial between Plaintiff and his defense attorney:

> Q    About those four tasings, did you have enough control over your body to say whether you were moving around?
>
> A    I don't know, what does 50,000 volts do to your body.  I imagine twitching is possible.

(Doc. 64-2 at 50, lines 14-18).

> Q    . . . . between the time you were stopped or tased, several officers have testified that you were thrashing about and maybe kicking, were you making those motions to attempt to avoid arrest?
>
> A    No, not at all, no, not at all.
>
> Q    Were you making those motions voluntarily?
>
> A.    No.

Doc. 64-2 at 54, lines 17-24.

As a result of the arrest, Plaintiff was charged with Driving Under the Influence, Careless Driving, Driving Without a License, Conspiracy, Possessing Drug Paraphernalia, Possession of Drugs, Flight to Avoid Apprehension, Attempting to Elude Police, Resisting Arrest, Disorderly Conduct (18 Pa.C.S.A. § 5503

(a)(1)), and Disorderly Conduct (18 Pa.C.S.A. § 5503(a)(4)).[2]
Doc. 64-2 at 6-7.  The court takes judicial notice[3] of the
dockets of the Cambria County Court of Common Pleas[4] which reveal
the fact that Plaintiff was found guilty of Driving Under the
Influence, Careless Driving, Driving Without a License,
Possessing Drug Paraphernalia, Possessing Drugs, Flight to Avoid
Apprehension, Attempting to Elude Police, and Disorderly Conduct
(18 Pa.C.S.A. § 5503(a)(4)). Plaintiff was found not guilty of

---

[2] 18 Pa.C.S.A. § 5503(a)(4) provides that

A person is guilty of disorderly conduct if, with
intent to cause public inconvenience, annoyance or alarm, or
recklessly creating a risk thereof, he:

. . . .

(4) creates a hazardous or physically offensive
condition by any act which serves no legitimate
purpose of the actor.

[3] In disposing of a motion for summary judgment, a court may sua
sponte take judicial notice of facts "capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be
questioned." Fed. R. Evid. 201(b).  See, e.g., In re Brooklyn Navy
Yard Asbestos Litigation, 971 F.2d 831, 839 (2d Cir. 1992)("any facts
subject to judicial notice may be properly considered in a motion for
summary judgment");  St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d
1169, 1171-72 (10th Cir. 1979)("a district court may utilize the
doctrines underlying judicial notice in hearing a motion for summary
judgment substantially as they would be utilized at trial. Thus, a
court may . . . take judicial notice, whether requested or not. . . )
(citations omitted); Mid-South Grizzlies v. National Football League,
550 F.Supp. 558, 570 n. 31 (E.D. Pa. 1982)("Judicial notice may be
used in resolving a motion for summary judgment."), aff'd, 720 F.2d
772 (3d Cir. 1983).

[4] The Common Pleas docket of Plaintiff's criminal conviction at
issue in this case, i.e., Commonwealth v. Armbruster, No. CP-11-CR-
0000481-2005 (Cambria County Com. Pl.), may be found at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1
&&ct=4&dkt=200053263&arch=0&ST=10/16/2006%203:45:11%20PM

resisting arrest, and not guilty of Disorderly Conduct (18 Pa.C.S.A. § 5503(a)(1)).[5]

Plaintiff appended to his evidentiary materials his sworn testimony in his criminal trial.  Doc. 64-2 at 30-54.  At no time in that testimony does he ever mention any officers kicking him, hitting him or kneeing him other than an officer placing a knee on the side of his head. Doc. 64-2 at 44 lines 20-25 ("I felt the knee being placed on the side of my head, it wasn't really that uncomfortable, it sounds uncomfortable, but my head is on the ground and somebody places a knee on it, as long as they are not like jumping on it, just a little pressure, the ground is flat. There was nothing really to hurt me.").  See also Doc. 64-2 at 46, lines 4-6 (knee in the back).

### *Discussion*

<u>Fourth Amendment Excessive Force Claims</u>

Plaintiff is making a Fourth Amendment claim of excessive force being used in the course of an arrest.  The Supreme Court has held that "*all* claims that law officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should

---

[5]  The court takes judicial notice of these convictions and acquittals because the Defendants erroneously state that Plaintiff was found "not guilty of disorderly conduct."  Doc. 51 at 5, ¶ 9. Plaintiff repeats this mistake.  Doc. 62 at 16, at ¶ 63.  However, according to the court docket, Plaintiff was found not guilty of one count of Disorderly Conduct but found guilty of a second count of Disorderly Conduct.

be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).  The analysis of reasonableness under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Id</u>. at 396 (internal quotations omitted).  The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." <u>Id</u>. In <u>Graham</u>, the defining case in the area of excessive force, the Supreme Court held that

> the "[t]est of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical applications," <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case including . . . whether he [the suspect] is actively resisting arrest or attempting to evade arrest by flight. . . .
>     The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force, the same standard of reasonableness applies: "Not every push or shove even if it may later seem unnecessary in the peace of a judge's chambers," <u>Johnson v. Glick</u>, 481 F.2d at 1033, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving– about the amount of force that is necessary in a particular situation.
>     As in our other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer's actions are "objectively reasonable" in

light of the facts and circumstances confronting them,
without regard to their underlying intent or
motivation. . . .  An officer's evil intentions will
not make a Fourth Amendment violation out of an
objectively reasonable use of force; nor will an
officer's good intentions make an objectively
unreasonable use of force constitutional.

Graham, 490 U.S. at 396 -97 (some citations omitted).   With

these standards in mind, the court considers the Defendants'

summary judgment motion.

The summary judgment record viewed in a light most favorable

to Plaintiff reveals that Plaintiff  "created a hazardous or

physically offensive condition by [his actions] which serve[d] no

legitimate purpose of the actor . . ., the defendant persisting

in disorderly conduct after reasonable warning or request to

desist."  Doc. 64-2 at 7, Criminal Information against Plaintiff,

quoting, 18 Pa.C.S.A. § 5503(a)(4).[6]   Although Plaintiff states

he did not resist arrest and in fact, he was acquitted of

---

[6]   Plaintiff is collaterally estopped from denying these facts.
Allen v. McCurry, 449 U.S. 90, 101 (1980);  Anela v. City of Wildwood,
790 F.2d 1063, 1068 (3d Cir. 1986)("The federal court, in determining
the collateral estoppel effect of a state court proceeding, should
apply the law of the state where the criminal proceeding took place").
Under Pennsylvania law, Plaintiff would be collaterally estopped from
questioning the facts that support his conviction of the disorderly
conduct conviction. M.B. ex rel. T.B. v. City of Philadelphia, 128
Fed.Appx. 217, 226 (3d Cir. 2005)("Furthermore, in Pennsylvania,
'criminal convictions are admissible in civil actions arising from the
same operative facts and circumstances [and] these convictions are
conclusive evidence of the criminal acts.'")(quoting, Stidham v.
Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa. Super. 1993)); Harsh
v. Petroll, 840 A.2d 404, 444 (Pa. Cmwlth. 2003)("Prior criminal
convictions are conclusive evidence in subsequent civil actions
arising out of the same incidents and concerning the same activity
which was criminally prosecuted in the prior action.")(citing, Folino
v. Young, 568 A.2d 171 (Pa. 1990)).

resisting arrest, he does not deny that his body may have engaged in involuntary spasms of thrashing about and kicking.  Doc. 64-2 at 54, lines 17-25.[7]  Reasonable officers, viewing the totality of the circumstances, after Plaintiff concededly drove away from the scene of the initial stop and had trouble getting his car door open after he was stopped the second time, could have believed or perceived Plaintiff's actions as a refusal to open his car door and get out when ordered to do so (Doc. 64-2 at 42,

---

[7]  To the extent that his affidavits now in the record or any that he would seek to offer in the future attempt to contradict the fact that his body made involuntary movements, he may not create a genuine issue of fact by contradicting his sworn testimony in his criminal trial by these later in time affidavits.  See, e.g., Czubaj v. Ball State University, 107 Fed.Appx. 664, 666-67 (7th Cir. 2004)("Czubaj's assertion in her summary judgment affidavit cannot create a disputed fact because it contradicts her deposition testimony. . . . Thus, Czubaj failed to demonstrate a genuine issue of material fact sufficient to preclude the entry of summary judgment for the University.");  McCarthy v. Kemper Life Insurance Companies, 924 F.2d 683, 687 (7th Cir. 1991) ("McCarthy cannot effectively oppose a motion for summary judgment by contradicting his own deposition testimony.");  S.W.S Erectors v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.");  Beckel v. Wal-Mart Associates, Inc., 301 F.3d 621, 623 (7th Cir. 2002)("This allegation, however, cannot be credited, because of its inconsistency with her deposition");  Bryant v. American Airlines, Inc., 75 Fed.Appx. 699, 701 n.2 (10th Cir. 2003) ("The district court also ruled that it would not consider certain allegations in the plaintiff's summary judgment affidavit, to the extent that they contradicted her earlier deposition testimony. We agree, and have not considered these allegations, which plaintiff claims create disputed issues of fact.").  Cf.  Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists. '[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit.'").

lines 14-17; Doc. 52-2 at 7 ("THE DRIVER WAS TOLD NUMEROUS TIMES, TO GET OUT OF HIS VEH. THE DRIVER COULD NOT COMPLY").  Further, viewing the so-called involuntary movements made by Plaintiff, the officers could have reasonably interpreted Plaintiff's movements as aggressive behavior and a refusal to comply,[8] and could have reasonably believed that the use of the force, including the alleged striking of Plaintiff with feet and/or hands, and that even the second, third and fourth use of the taser were all necessary to get Plaintiff to comply, as was the pulling of Plaintiff's hair and the forcing of Plaintiff onto the side of the police cruiser.  Given that a reasonable officer observing all the facts surrounding Plaintiff's arrest, especially the allegedly involuntary movements of Plaintiff's body, could have reasonably believed the force used was necessary given that despite the use of such force Plaintiff continued to engage in those movements, summary judgment should be granted as to all Defendants as to all of Plaintiff's claims of excessive force other than his claim of excessive force by Defendant Marguccio in the first use of the taser.

---

[8] At the very least, Plaintiff has adduced no evidence that reasonable officers in the position of the Defendants would have known that Plaintiff's involuntary movements did not constitute Plaintiff's active resistance.  See, e.g., Smith v. Boyle 2004 WL 2203438, *2 (N.D. Ill. Sept. 29, 2004) ("In order for an officer to be held liable . . . . , Plaintiff must show that 'the officer had reason to know: (1) that excessive force was being used'")(quoting, Byrd v. Brishke, 466 F.2d 6, 13 (7th Cir. 1972)).

This leaves only the issue of Officer Marguccio's first use of the taser because, viewing the summary judgment record in a light most favorable to the Plaintiff, it appears that Plaintiff's allegedly involuntary movements only began after the first use of the taser.  Hence, according to the summary judgment record, there is a disputed issue of fact whether before Officer Marguccio used the taser for the first time Plaintiff was engaging in these thrashing movements or not.  Plaintiff denies that he was thrashing about prior to the first taser firing. Doc. 62 at 10, ¶ 38.  It is undisputed that it was Officer Marguccio who employed the taser in the first instance and indeed all four times.  Doc. 52-3.  The officers' accounts vary markedly from Plaintiff's account insofar as they all attest that he was engaging in these thrashing and kicking movements and attempting to get up from the prone position even before the first taser event.  Doc. Nos. 52-2 -- 52-6; Doc. 52-2 at 9 (after first being put on the ground and handcuffed, "Suspect ARMBRUSTER became aggressive once in handcuffs and was told numerous times by both ofcrs KEIM and MARGUCCIO to remain still and not to move. Suspect ARMBRUSTER began thrashing about and was attempting to get off the ground when ofcr MARGUCCIO touched stunned him with the Taser.").

Viewing the record in a light most favorable to Plaintiff, as the non-moving party, the court is unable to conclude that

there is no material factual dispute with respect to the first application of the taser by Officer Marguccio and, hence, summary judgment will be denied to Officer Marguccio on this precise Fourth Amendment excessive force claim.

As discussed, it is undisputed that none of the Officers, other than Marguccio, used a taser on Plaintiff at any time. Hence, they would be entitled to summary judgment on the sole surviving claim of excessive force in the use of the taser the first time.  However, it appears that Plaintiff may be attempting to amend his complaint to include a claim that the other officers share liability with Officer Marguccio because they witnessed this use of allegedly excessive force in the first taser event and did nothing to prevent it.  Doc. 63 at 6-7.

As one court has observed, in order to establish a Fourth Amendment violation for failure to intervene,

> a plaintiff must establish that: (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene." *See Smith v. Mensinger*, 29 F.3d 641, 650-51 (3d Cir.2002)

Fernandez v. Stack, 2006 WL 777033, *12 n.8 (D.N.J. March 27, 2006).  Moreover it is the Plaintiff's burden to adduce evidence of both requirements.  See, e.g., id. ("a plaintiff must establish. . . ."); Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1289 (N.D. Ga. 1998)("plaintiff must proffer

evidence that the officer in question had a reasonable opportunity to intervene.").

In conducting this inquiry as to whether either of the officers other than Marguccio had a realistic and reasonable opportunity to intervene, courts consider many factors, including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc.  See, e.g., Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996) (where officer "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose."); Swinyer v. Cole, 2006 WL 1874100, *3 (W.D. Wash. July  6, 2006)("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."); Mitchell v. James, 2006 WL 212214, *5  (E.D. Mo. Jan. 27, 2006)("it was proper to consider the proximity of the officers to the officer who allegedly used excessive force, the nature of the officer's actions, whether there was a substantial risk of serious harm to the inmate, the inmate's actual injuries . . .").

15

Plaintiff has adduced no evidence at all as to whether the
other officers had a reasonable and realistic opportunity to
intervene prior to Officer Marguccio's first use of the taser.
The pertinent inquiry is carefully circumscribed under the
instant facts, because, as a matter of law, Defendant Marguccio's
use of the taser the second, third and fourth times did not
constitute a Fourth Amendment violation and hence the other
Defendants' alleged failure to intervene at those points, i.e.,
after the first use of the taser and after Plaintiff started to
make involuntary movements, cannot serve as a basis of liability
under the Fourth Amendment because where there is no violation,
there is no duty to intervene. Long v. Pend Oreille County, 2006
WL 2850011, *10 (E.D. Wash. 2006)("Because the force used in this
case was not constitutionally excessive, the other officers
[sought to be held liable for failing to intervene] cannot be
held liable for failure to intervene or protect."). Hence, the
only potential excessive force violation for which the other
Defendants could be liable for failing to intervene in is
Defendant Marguccio's first use of the taser. There is no
evidence as to how long it took Defendant Marguccio to pull out
the taser and use it the first time. Plaintiff has pointed to no
evidence as to whether there was any warning regarding the use of
the taser, how quickly from the time Defendant Marguccio
unholstered the taser to his using it on the Plaintiff the first

16

time, how close in physical proximity the other defendants were
to Officer Marguccio when he unholstered the taser and used it
the first time and whether any of the other officers had a
realistic opportunity to intervene given the apparently short
duration of the first taser incident.  See, e.g., Riley, supra;
Long, supra;  Swinyer, supra; Hogan, supra.  Given that Plaintiff
has failed to adduce evidence from which a reasonable jury could
find that the other Defendants failed to intervene because there
is no evidence as to their reasonable opportunity to do so with
regards to the first use of the taser on Plaintiff, all the
Defendants (other than Marguccio) are entitled to summary
judgment with respect to the claim that the first taser incident
violated Plaintiff's Fourth Amendment rights.

    Johnstown Police Department Is Not a Proper Party

    Plaintiff's complaint names as a defendant the Johnstown
Police Department.  The Defendants assert in their brief, that
the Police Department has no corporate identity and therefore
lacks the capacity to be sued.  Defendants are correct.  Johnson
v. City of Erie, 834 F.Supp. 873 (W.D. Pa. 1993).  The Johnson
Court noted that the "numerous courts that have considered the
question of whether a municipal police department is a proper
defendant in a section 1983 action have unanimously reached the
conclusion that it is not."  Id. at 879.  Plaintiff has not
provided any argument as to why this holding in  Johnson is

inapplicable here nor does the court perceive any reason that the holding of <u>Johnson</u> would be inapplicable.  As such, it appears that the Johnstown Police Department should be dismissed as a party defendant.  <u>See</u>, <u>e.g.</u>, <u>Cairns v. Franklin Mint Co.</u>, 24 F.Supp.2d 1013 (C.D. Cal. 1998) (striking improper party defendant).

<u>City of Johnstown Is Entitled To Summary Judgment</u>

Plaintiff's complaint also attempts to hold the City of Johnstown liable for violating his Fourth Amendment rights. Defendants contend that the City of Johnstown is entitled to summary judgment because Plaintiff has failed to adduce any evidence of a policy or custom on the part of the City with respect to police officers that caused Plaintiff any deprivation of his federal rights. We agree.

In <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 818 (1985)(plurality),[9] the Court observed: "the *Monell* Court held that only deprivations visited pursuant to municipal 'custom' or 'policy' could lead to municipal liability. This language tracks the language of the statute; it also provides a fault-based analysis for imposing municipal liability."  Hence, a municipal

---

[9] In <u>Tuttle</u>, a plurality of the Court held that "a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . ." <u>Id</u>. at 823-824. One year later, in <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986), the Court held that, under certain circumstances, municipal liability may be imposed for a single decision or action by a municipal policymaker.

entity such as the City of Johnstown may be liable under Section
1983, if and only if, the deprivation of rights suffered by a
plaintiff were caused by a policy or custom of the municipal
defendant. Id.; City of Canton, Ohio v. Harris, 489 U.S. 378, 385
(1989)("Thus, our first inquiry in any case alleging municipal
liability under § 1983 is the question whether there is a direct
causal link between a municipal policy or custom and the alleged
constitutional deprivation."), abrogation on other grounds
recognized by, Tokar v. Armontrout, 97 F.3d 1078 (8th Cir.1996).

Instantly, even the most favorable reading of the summary
judgment record reveals that there is no evidence of a policy or
custom on the part of the City of Johnstown that can be said to
have caused Plaintiff any Fourth Amendment violation.  The
Plaintiff has failed to adduce, as is his burden, any evidence of
a policy or custom on the part of the City of Johnstown that
could possibly have any causal connection to Plaintiff's
deprivations.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir
1990) ("However, proof of the mere existence of an unlawful
policy or custom is not enough to maintain a § 1983 action. A
plaintiff bears the additional burden of proving that the
municipal practice was the proximate cause of the injuries
suffered.")(emphasis added).  In fact, the policy with respect to
the use of tasers, which the Defendants submitted, Doc. 52-5 at
20-25, amply demonstrates that there is no genuine issue of

19

material fact with respect to whether a policy or custom of the city of Johnstown caused Plaintiff's Fourth Amendment violation. This is so because that policy provides guidance as to when the taser is to be used, including instances when "attempts to subdue the subject by other conventional tactics [i.e., tactics other than taser use] have been or will likely be, ineffective in the situation at hand; or there is reasonable expectation that it will be unsafe for officers to approach with in [sic] contact range of the subject." Doc. 52-5 at 20. Moreover, the policy provides that "Advanced Tasers shall be issued **ONLY** to those officers who have been certified in the Johnstown Police Department Taser deployment program. Officers will re-certify annually to maintain their certification." Id. In addition, the policies require the monitoring of the use of the tasers, and the requirement that an officer assures medical treatment is provided for the person tasered if necessary. Id. These policies, the only record evidence of Johnstown's policy with respect to tasers, clearly exhibit a reasoned and reasonable approach to the use of tasers. To the extent that Plaintiff suffered any violation of his rights, it is clear that it was not Johnstown's policies that caused the harm. If anything, given Plaintiff's allegations, it was the failure to abide by the policies that caused Plaintiff any harm. As such, Johnstown is entitled to summary judgment.

20

<u>Chief Foust is entitled to summary judgment</u>

Plaintiff names Craig Foust, the Chief of Police, as a defendant.  However, it is undisputed that Defendant Foust did not personally participate in the arrest of January 13, 2005 that gave rise to the current suit.  Because he did not participate in the events of that date, he cannot be held liable.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)("A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs.").  To the extent that Plaintiff seeks to impose liability on Defendant Foust merely on the basis that he was the Defendants' supervisor,  Plaintiff's theory seeks to establish liability the grounds of respondeat superior.  <u>McClelland v. Facteau</u>, 610 F.2d 693, 695 (10th Cir. 1979)("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way.").  However, Section 1983 does not permit liability premised upon respondeat superior.  <u>Rode v. Dellarciprete</u>, 845 F.2d at 1207 ("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior.").

To the extent that Plaintiff is affirmatively arguing that Defendant Foust did or failed to do something as a supervisor that caused him harm, Defendant Foust is still entitled to

summary judgment because Plaintiff failed to adduce any evidence
of such.  The Court of Appeals for the Third Circuit set forth
the elements of a cause of action based upon supervisory
wrongdoing.  The Court observed that:

> [i]n <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir.
> 1989), this court identified the elements of a
> supervisory liability claim.  The plaintiff must (1)
> identify the specific supervisory practice or procedure
> that the supervisor failed to employ, and show that (2)
> the existing custom and practice without the
> identified, absent custom or procedure created an
> unreasonable risk of the ultimate injury, (3) the
> supervisor was aware that this unreasonable risk
> existed, (4) the supervisor was indifferent to the
> risk; and (5) the underling's violation resulted from
> the supervisor's failure to employ that supervisory
> practice or procedure. We emphasized that "it is not
> enough for a plaintiff to argue that the
> constitutionally cognizable injury would not have
> occurred if the superior had done more than he or she
> did." <u>Sample</u>, 885 F.2d at 1118. Rather, the plaintiff
> must identify specific acts or omissions of the
> supervisor that evidence deliberate indifference and
> persuade the court that there is a "relationship
> between the 'identified deficiency' and the 'ultimate
> injury.' " Id.

<u>Brown v. Muhlenburg</u>, 269 F.3d 205, 216 (3d Cir. 2001).

Instantly, Plaintiff has failed to adduce any evidence that
Defendant Foust employed or failed to employ a supervisory
practice that was deliberately indifferent to the risk that
Defendant Marguccio would assault Plaintiff.  There is no
evidence as to Defendant Marguccio's training or lack thereof
other than the fact adduced by Defendants that Officer Marguccio
was trained and certified to use the taser on the date of
Plaintiff's arrest. Doc. 52-3 at 1, ¶ 3; Doc. 52-5 at 2, ¶ 9.

This evidence if anything, establishes the lack of deliberate indifference on the part of Defendant Foust.  Nor is there any evidence as to Defendant Marguccio having a history of assaulting arrestees.  Hence, there is no evidence to show that Defendant Foust was aware of any inadequacies in Defendant Marguccio or in his training, yet alone evidence that Defendant Foust was deliberately indifferent to a risk that Defendant Marguccio posed a risk of harm to arrestees.

Lastly, Plaintiff alleges that Defendant Foust failed to properly investigate the alleged assault on Plaintiff and he seeks to impose liability based on this alleged failing.  Doc. 16 at 5, ¶ 21.  However, such actions or inactions that occur after the alleged assault had already been completed cannot be said to have been the "cause" of Plaintiff's injuries.  Without such causation there can be no liability.  See, e.g., Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("*Brower v. Inyo County*, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.").  Accordingly, summary judgment should be

entered in favor of Defendant Foust, regardless of the theory of liability.

Qualified Immunity

Defendants raise a qualified immunity defense as well.   A "government official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000).  In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Although in the preceding analysis the Court determined that the Defendants did not violate Plaintiff's Fourth Amendment rights (excluding the question concerning Defendant Marguccio and his first use of the taser), assuming, for the sake of argument, and analyzing the qualified immunity defense, the Court will assume such actions on the part of the Defendants did violate Plaintiff's Fourth Amendment rights.  Even assuming such, the Defendants would be entitled to summary judgment on the basis of qualified immunity because it would not have been clear to a

24

reasonable officer that their actions violated Plaintiff's Fourth Amendment rights given Plaintiff's involuntary actions, which reasonable officers could have perceived as resistance. Hence, as an alternative holding, the Defendants are entitled to qualified immunity for all their actions.  This is true for all Defendants and their actions except for Defendant Marguccio's action in using the taser the first time.

Given the facts of record as attested to by Plaintiff, it is clear that if those facts were believed, a reasonable officer would have known under those facts that using a taser on a compliant arrestee lying on the ground with his hands cuffed behind his back violated Plaintiff's right to be free from excessive force.  Hence, qualified immunity does not merit the grant of summary judgment as to Defendant Marguccio's actions in his use of the taser the first time.[10]

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are

---

[10]  Defendants claim that Plaintiff's request for punitive damages must be dismissed because there is no evidence to show that the Defendants' actions were motived by evil intent or callous indifference to Plaintiff's rights.  Doc. 50 at 13-14. The Court agrees with Defendants as to all Defendants and their actions except as to Defendant Marguccio's actions in using the taser on Plaintiff the first time.  Plaintiff's account, if believed, is that Defendant Marguccio stunned a compliant arrestee, lying prone on the ground with his hands cuffed behind his back, and just before doing so stated, "you won't run any more." Doc. 64-1 at 15.  This is sufficient to evince evil intent or callous disregard.

allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                              Respectfully submitted,

                              /s/   Amy Reynolds Hay
                              United States Magistrate Judge


cc:  The Honorable Kim R. Gibson
     United States District Judge

     Matthew Armbruster - BK-5459
     SCI Rockview
     Box A
     Bellefonte, PA 16823

     Paul D. Krepps
     Marshall, Dennehey, Warner, Coleman & Goggin
     600 Grant Street, USX Tower - Suite 2900
     Pittsburgh, PA 15219